

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-25-00023-CV

---

**Macsoup, LLC d/b/a The UPS Store #7680; Robbie Kirkpatrick McGregor aka Robbie McGregor; and Jay Soucia, Appellants**

v.

**Greg Weithoner, Appellee**

---

On Appeal from the 261st District Court
Travis County, Texas
Trial Court No. D-1-GN-23-002160

---

## MEMORANDUM OPINION[1]

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

When Appellants Macsoup, LLC, Robbie Kirkpatrick McGregor, and Jay Soucia were searching for a location in Austin, Texas, to open a new UPS Store, Appellee Greg Weithoner saw an opportunity to move his business and cut back on his work hours. What began as friendly discussions in an Austin coffee shop ended in a contentious trial and, now, this appeal in which the parties dispute the nature and terms of their agreement. Appellants appeal the trial court's judgment in favor of Weithoner on his claims and their counterclaims. We affirm.

## I. BACKGROUND

The parties own similar businesses. Since 2013, Weithoner has owned Austin Mail Express which rents mailboxes; ships package using commercial shippers such as FedEx, UPS, and DHL; and packs and ships large items (which the parties refer to as the "freight" component of the business). Soucia and McGregor own and operate UPS stores in Austin through their company Macsoup, LLC.

New UPS Stores can only be opened in a "territory" where a UPS Store does not already exist. Soucia and McGregor were looking for a location in unclaimed territory to open a new UPS store, specifically, in the territory where Austin Mail Express was located on Slaughter Lane. Weithoner, meanwhile, was looking to cut back work. In 2021, the parties began discussing a deal for Appellants to take over Weithoner's lease to use the space for a UPS store. At a March 2022 meeting in a nearby coffee shop, Weithoner proposed a price of $300,000 and Soucia responded that the "number was good." Weithoner testified that Macsoup also agreed to pay his moving expenses and half of the security deposit. A letter of intent was drafted, but never signed by Weithoner and, by its own terms, was not a binding agreement except as to provisions that are not at issue in this appeal. Weithoner also circulated a proposed promissory note and asset purchase

agreement, but neither was ever executed. Nonetheless, the parties continued moving forward with their deal.

In September 2022, Weithoner's landlord reassigned the lease to Appellants. The following month, as agreed, Appellants paid Weithoner $150,000 (half of the agreed-upon price) and Weithoner vacated the premises. Weithoner re-opened Austin Mail Express in Driftwood, Texas—about 15 miles from its prior location on Slaughter Lane.

Disputes about the parties' obligations arose soon afterwards. Appellants claimed that they did not know that Weithoner would remain in business, albeit in a different location, and that the agreement included the transfer of his freight business. When Appellants failed to make any more payments towards the $150,000 balance, Weithoner filed suit for breach of contract or, in the alternative, promissory estoppel, fraud, and unjust enrichment. Appellants filed counterclaims for breach of contract, fraud, and violations of the Deceptive Trade Practices Act.

At a bench trial, the parties testified in support of their interpretation of the agreement, and specifically, whether it included Austin Mail Express's freight business. Although not signed by Weithoner, the letter of intent states that in exchange for $300,000, Weithoner would transfer the "goodwill" of Austin Mail Express. Weithoner testified that the parties never discussed goodwill and that he does not know what the term means. However, he also admitted that he previously testified during a deposition that he believed that his freight clients were considered "goodwill." Weithoner says that the parties' agreement was only that he would move out so that Appellants could take over the lease for a UPS Store while Soucia testified that the freight portion of the business was a large part of the negotiations and was the reason that Appellants agreed to pay $300,000.

According to Appellants, they never had the "opportunity" to provide freight services at the UPS Store because Weithoner did not give them his client list. Weithoner, on the other hand, presented evidence that the freight portion of his business was not a transferrable asset. He testified that he did not have customer contracts with his freight customers. Instead, much of his freight business were repeat customers or referrals because over the years, he built a loyal customer base due to his "niche" expertise in making custom boxes and packaging. Two of his repeat customers testified at trial. One was a creative director for an art gallery, and the other was the president of a company that designed and manufactured satellite deployers. Both had previously used UPS for shipping but had stopped after shipments were damaged, lost, or late. They testified that they would no longer use UPS for packing and shipping their valuable items. Finally, there was conflicting evidence about whether the UPS store even had the ability to handle the packing and shipping of freight.

The trial court entered judgment for Weithoner on his breach of contract and promissory estoppel causes of action and entered a take-nothing judgment on all other claims and counterclaims. The judgment awards money damages to Weithoner in the amount of $156,700 (representing the unpaid balance, moving expenses, and half of the security deposit) and attorney's fees of $40,817.55. The trial court also issued findings of fact and conclusions of law that we discuss below.

In this appeal, Appellants challenge (1) the trial court's finding of a valid and enforceable contract; (2) the trial court's finding that Appellant's promise was definite enough to be enforced; (3) the award of attorney's fees; and (4) the denial of relief on Appellants' fraud counterclaim.

## II. ANALYSIS

### A. Existence of a contract

Appellants' first issue challenges the existence of a valid contract, an element to a breach of contract claim. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n. 21 (Tex. 2018) (listing the elements).

### (1) Judicial admission

As an initial matter, Weithoner argues that in their pleadings and testimony, Soucia and McGregor judicially admitted the existence of a contract and, therefore, cannot challenge that element. A judicial admission is "a formal waiver of proof usually found in pleadings or the stipulations of the parties." *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). "A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it." *Id.*

Appellants themselves asserted the existence of a contract by filing a counterclaim for breach of contract. However, their assertions were expressly made in the alternative. "An assertion of fact pled in the alternative is not a judicial admission." *Amaro Oilfield Automation, LLC v. Lithia CM, Inc.*, 661 S.W.3d 477, 484 n.3 (Tex. App.—El Paso 2023, pet. denied); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, *not pled in the alternative*, in the live pleadings of a party are regarded as formal judicial admissions." (emphasis added); Tex. R. Civ. P. 48 (allowing a party to plead in the alternative). Because Appellants pleaded a breach of contract in the alternative, the related allegations were not judicial admissions.

Weithoner also points to Soucia's testimony that the parties had agreed on a "package deal" for $300,000. McGregor also confirmed in his testimony that the parties made an agreement in

March or April 2022. But then he later stated, "[W]e never had a definitive agreement with [Weithoner]." *Cruz v. Mor-Con, Inc.*, 672 S.W.3d 175, 184 (Tex. App.—Tyler 2023, no pet.) (citing cases for principle that "[a]dmissions that might appear to be judicial admissions must be read, not in isolation, but in context of the witness's entire testimony[.]").

Statements made during a party's testimony that are contrary to his position are only "quasi-admissions;" they serve as some evidence, but are not "conclusive upon the admitter" unless it appears:

(1) That the declaration relied upon was made during the course of a judicial proceeding. . . .

(2) That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony. . . .

(3) That the statement is deliberate, clear, and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated. . . .

(4) That the giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based.

(5) That the statement is not also destructive of the opposing party's theory of recovery.

*Mendoza*, 606 S.W.2d at 694 (quoting *U.S. Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex. App.—San Antonio 1951, writ ref'd)).

We do not find that Soucia and McGregor's testimonial statements were so "deliberate, clear, and unequivocal" that they serve as judicial admissions that the parties agreed on all material and essential terms and formed a contract. *Id*.

### (2) Material and essential terms

The trial court found that an oral contract was formed when Weithoner told Soucia and McGregor that his asking price to leave the Slaughter Lane location was $300,000 and they responded that the price was acceptable. It concluded that the agreement "under which Austin Mail

6

Express would vacate the Premises and cause the assignment of its lease to Defendants in exchange for payment of $300,00 [] contained all material and necessary terms under the circumstances."

Appellants argue that the trial court erred in finding that a contract existed because the essential terms are not clear and definite. Instead, they claim, the parties only reached an agreement to agree, which is not an enforceable contract.

To constitute a contract, an agreement "must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound" and "to 'enable a court to understand the parties' obligations' . . . and to give an appropriate remedy if they are breached." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (cleaned up). Even if the contract does not spell out *all* terms, it is a binding contract so long as it includes the material and essential terms. *Id.* A term is material and essential if the parties to the contract would consider it a "vitally important ingredient[]." *Id.* (quoting *Neeley v. Bankers Tr. Co.*, 757 F.2d 621, 628 (5th Cir.1985)). We determine whether a term is material and essential on a case-by-case basis. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013). Whether a contract includes all essential terms is a question of law that we review *de novo*. *Id.*; *DKH Homes, LP v. Kilgo*, No. 03-10-00656-CV, 2011 WL 1811435, at *3 (Tex. App.—Austin May 11, 2011, no pet.) (mem. op.).

According to Appellants, the missing essential terms are "what was actually being sold" and the financing terms. As found by the trial court, however, the oral contract was not for the "sale" of anything; instead, the consideration to be provided by Weithoner in exchange for $300,000 was "vacat[ing] the Premises and caus[ing] the assignment of its lease to Defendants," clearing the way for them to open a UPS Store there.[2]

---

[2] The parties do not dispute that contract also included transferring Austin Mail Express's mailbox customer contracts to Macsoup.

As for the "terms of the financed portion of the sale," which Appellants say were also material and essential but missing, we assume that they are referring to the time for payment and any interest rate.[3] Neither of these are essential terms whose absence renders the contract unenforceable. If a contract does not include a time for performance, such as the time for payment, the law will imply a reasonable time, especially when necessary to avoid forfeiture. *Fischer*, 479 S.W.3d at 231; *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 827 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Smith v. Nash*, 571 S.W.2d 372, 375 (Tex. App.—Texarkana 1978, no writ). Further, when a party does not allege or seek to recover interest, the interest rate is not considered an essential term.[4] *Dr. Mylissa's Med. Boutique LLC v. Balboa Capital Corp.*, No. 02-25-00271-CV, 2025 WL 3119021, at *3 (Tex. App.—Fort Worth Nov. 6, 2025, no pet.) (mem. op.); *Vela v. Vela*, No. 14-12-00822-CV, 2013 WL 6700270, at *6 (Tex. App.—Houston [14th Dist.] Sept. 24, 2013, no pet.) (mem. op.) ("Because Theresa does not allege or seek to recover any set interest on the principal loan balance, we conclude that interest is not a material term of the contract as alleged by Theresa."). Weithoner did not allege or seek any contractual interest on the unpaid balance.

The oral contract in this case contains all material and essential terms—Appellants were to pay $300,000 for Weithoner to move his business out of the Slaughter Lane location and allow Appellants to take over his lease. The failure to include the time for payment and the interest rate does not render it unenforceable. We overrule Appellant's issue one. Because we affirm the judgment on the breach of contract claim, it is unnecessary for us to reach Appellants' second issue

---

[3] The letter of intent stated that $150,000 was to be paid at closing and the remaining $150,000 was "to be paid in monthly installments over three years and with an interest rate of five percent (5%)." The unsigned promissory note would have required monthly payments for two years with a 5% interest rate. However, the trial court found that the oral contract was formed prior to these unsigned and nonbinding documents.

[4] This does not mean that interest cannot be charged when the contract is silent about interest. When the parties omit an interest rate from their contract, "the statutory rate of six percent is read into the agreement by law." *Tubelite, a Div. of Indal, Inc. v. Risica & Sons, Inc.*, 819 S.W.2d 801, 805 (Tex. 1991); Tex. Fin. Code § 302.002.

challenging the judgment for Weithoner's alternative cause of action (promissory estoppel). Finally, in their third issue, Appellants challenge the attorney's fees award solely on the ground that there was not a valid and enforceable contract or definite promise. Because we hold above that the contract was enforceable, we also overrule Appellants' third issue.

## B. Fraud counterclaim

Appellants alleged that Weithoner committed fraud by representing that they would be receiving his freight business as part of the deal. The trial court rejected this claim. Its findings of fact state:

> Defendants did not request, nor did Weithoner agree, that Weithoner enter into any non-competitive or non-solicitation covenants. Defendants at the time of this oral agreement also did not request Austin Mail Express's "goodwill" be an acquired asset, nor that they considered "goodwill" to mean an assignment of all customer contracts or a prohibition against Austin Mail Express working its customers at the Premises in the future. The parties also did not discuss any acquisition of Austin Mail Express's freight clients.

> Weithoner advised defendants that, after the sale, he would open a new location of Austin Mail Express and continue providing the same services as he had before. After Defendants took over the Premises, Weithoner opened Austin Mail Express in Driftwood, Texas. Defendants raised no objections.

Appellants argue that the trial court erred by issuing a take-nothing judgment on its fraud claim.

### (1) Standard of review and applicable law

To recover on fraud, a party must prove that the other party made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter

9

of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). To succeed on a factual sufficiency challenge, the party must show that the "finding is against the great weight and preponderance of the evidence." *Id*. at 242.

### (2) Legal sufficiency of the evidence

We start with reviewing the legal sufficiency of the evidence in which we determine whether Appellants' evidence conclusively established their claim. In their brief, Appellants discuss evidence that they say proves the misrepresentation element of a fraud claim—namely, the financial report (which the parties called an "Ultimate Report") and Weithoner's prior characterization of "goodwill" as including the freight business. They do not point to evidence that conclusively proves *all* elements of their fraud cause of action as would be required to show that, as a matter of law, they were entitled to prevail. "[A] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. 38.1(i). Failure to comply with the briefing rules results in a waiver of the complaint. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.).

However, even if we consider only the evidence and element discussed by Appellants, that evidence does not prove as a matter of law that Weithoner made a misrepresentation.

Appellants do not state that any representations of profit in the Ultimate Report were inaccurate. Rather, they argue that by providing the report, which included freight sales, Weithoner represented that their agreement included the transfer of the freight business. The Ultimate Report, however, was provided to Appellants so that they could exercise due diligence and evaluate the profitability of the location. The report itself makes no representation that Weithoner was selling every aspect of the business to Appellants. Indeed, some of the services reflected in the report are services that a UPS Store could not provide (for example, FedEx shipping).

Additionally, Appellants say that Weithoner's deposition testimony that he believed that the "goodwill" of Austin Mail Express included the freight business (even though he also testified that he did not know what goodwill meant), is proof that he represented that the freight business was an asset being sold. However, the letter of intent, which contains the only mention of Appellants buying the company's "goodwill," was drafted after the oral contract was formed, was not signed by Weithoner, and expressly states that it is not binding.

Appellants' evidence did not establish as a matter of law that Weithoner made a representation to Appellants that the freight business was being sold to them. The evidence is legally sufficient to support the trial court's take-nothing judgment on Appellants' fraud claim.

### (3) Factual sufficiency of the evidence

In a factual sufficiency review, we consider *all* the evidence to determine if the court's finding was against the great weight and preponderance of the evidence. The parties provided conflicting descriptions of their negotiations. Weithoner testified that in the discussions leading to the oral contract, he was never asked to turn over his freight customer contracts. Soucia, on the other hand, testified that a lot of the conversations leading to the agreement revolved around the freight business and that it was "clear" that the freight business was part of the transaction.

The court also heard evidence that the freight portion of Austin Mail Express was not even an asset that Weithoner *could* sell. Weithoner testified that he did not have any contracts with his freight customers, meaning that there was nothing to transfer. There was no evidence that he represented otherwise, and, in fact, Soucia testified that he did not believe that Weithoner had contracts with his freight customers. Soucia and McGregor both agreed that, absent a customer contract, the freight customers were free to choose which business to use for packing and shipping. Additionally, Soucia agreed that there was not a noncompetition agreement and that, if one of

11

Weithoner's customers continued doing business with him after he moved out of the Slaughter Lane location, Weithoner would not be doing anything wrong.

As the finder-of-fact in a bench trial, the trial court was the sole judge of the credibility of witnesses. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). "The trial court does not abuse its discretion if it bases its decision on conflicting evidence or when evidence of a probative or substantive character exists to support the decision." *Udall v. Minns*, 730 S.W.3d 704, 727 (Tex. App.—Austin 2026, pet. denied). The trial court's finding that Weithoner made no representation that he would transfer his freight business to Appellants was not against the great weight and preponderance of the evidence.

Finding that the evidence was both legally and factually sufficient to support the trial court's rejection of Appellants' fraud counterclaim, we overrule Appellant's fourth issue.

## III. CONCLUSION

The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

June 29, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.